**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JKG, BY AND THROUGH | : | |
| HIS PARENT, JK, AND | : | |
| JKG, INDIVIDUALLY, | : | |
| Plaintiffs, | : | Civil No. 2:19-cv-05276-JMG |
| | : | |
| v. | : | |
| | : | |
| WISSAHICKON SCHOOL DISTRICT, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                 **March 23, 2021**

## I.   OVERVIEW

School districts receiving federal funds under the Individuals with Disabilities Act ("IDEA") must provide special education services tailored to the unique needs of students with disabilities.  At a minimum, the school district must implement a program that is reasonably calculated to enable the student to receive meaningful educational benefits in light of their intellectual potential and individual abilities.  When a school district fails to meet this requirement, the aggrieved party is entitled to an impartial administrative hearing for the purpose of identifying any deficiencies in the student's educational program and obtaining an appropriate remedy.

In February 2019, Plaintiff JKG, by and through his parent JK, sought administrative review of Defendant Wissahickon School District's purported violations of IDEA and Section 504 of the Rehabilitation Act.  Although the Hearing Officer found that the District committed certain procedural errors in administering JKG's educational program, he ultimately determined that Plaintiffs were not entitled to compensation.  Presently before the Court is Plaintiffs' Motion

for Summary Judgment, which seeks reversal of the Hearing Officer's decision and an award of compensatory education. In response, Defendant filed a Motion for Judgment on the Administrative Record asking the Court to uphold the Hearing Officer's decision. For the reasons set forth below, the Court finds that Plaintiffs have failed to offer evidence justifying departure from the "due weight" afforded to factual findings of the Hearing Officer. Accordingly, Plaintiffs' Motion for Summary Judgment is denied and Defendant's Motion for Judgment on the Administrative Record is granted.

## II.    BACKGROUND

### A.  Individuals with Disabilities Act

IDEA requires states receiving federal funding under the statute to implement "policies and procedures to ensure that…[a] free appropriate public education ("FAPE") is available to all children with disabilities." 20 U.S.C. § 1412(a)(1)(A). FAPE is an education "specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley*, 458 U.S. 176, 188-89 (1982). To that end, each public school district in a state receiving IDEA funds must "identify and evaluate all students reasonably believed to have a disability." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 267 (3d Cir. 2014). This requirement is known as a district's "Child Find" obligation.[1] *Id.*

In providing FAPE to students with a disability, the school district must work with parents to tailor special education and related services to the unique needs of the student by means of an Individualized Education Program ("IEP"). 20 U.S.C. §§ 1412(a)(4), 1414(d). An

---

[1] Pennsylvania's Child Find procedures are set forth in 22 Pa. Code §§ 14.121-14.125.

IEP must include a comprehensive written statement fashioned by a multidisciplinary team detailing the child's abilities, needs, and goals for their education. *Melissa S. v. School Dist. of Pittsburgh*, 183 Fed. App'x 184, 187 (3d Cir. 2006). "At a minimum, the IEP must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities" but need not provide an "optimal level of services." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012). Any disputes concerning the adequacy of student's IEP may be resolved at an impartial due process hearing. 20 U.S.C. § 1415(f)(1)(A).

Plaintiffs alleging improper administration of an IEP must demonstrate that the school district failed to implement substantial portions of the IEP such that it denied the student a meaningful educational benefit. *Melissa S.*, 183 Fed. App'x at 187. A mere *de minimus* failure does not constitute a denial of FAPE. *Id.* An administrative hearing officer who determines that the district improperly executed an IEP, thereby denying a student FAPE, may order an appropriate remedy that includes compensatory education. 20 U.S.C. § 1415(f)(3)(E). This remedy requires the school district to reimburse the costs of educational benefits that they should have initially provided to the student. *Mary T. v. School Dist. of Philadelphia*, 575 F.3d 235, 249 (3d Cir. 2009). The purpose of this remedy is to place the student in the position they would have been but for the district's denial of FAPE. *Ferren C. v. School Dist. of Philadelphia*, 612 F.3d 712, 717-18 (3d Cir. 2010). In calculating a compensatory education remedy, the student is entitled to an award equal to the period of deprivation, but not including the time the school district reasonably requires to correct the problem. *Mart T.*, 575 F.3d at 249.

### B.  Allegations

Plaintiff JKG is a minor who, during the relevant period, lived within the boundaries of the Wissahickon School District.  Pl.'s Statement of Facts ¶ 1, ECF No. 15 (Hereinafter "PSOF").  Wissahickon School District ("the District") is a Pennsylvania public school district and educational agency subject to the provisions of IDEA.  *Id.* ¶ 2.  In May 2017, JKG toured Blue Bell Elementary School, a school within the District, and met school counselor Phyllis Burke.[2]  Def.'s Statement of Facts ¶ 4, ECF No. 12 (Hereinafter "DSOF").  Plaintiff JK thereafter enrolled JKG at as a third grade student for the 2017-2018 school year on August 24, 2017.  *Id.* ¶ 2; PSOF ¶ 4.  During registration, JK completed a Health History Form and indicated in the general comments section that JKG had been diagnosed with Generalized Anxiety Disorder, and had a rule-out[3] for Autism Spectrum Disorder, Attention Deficit Disorder ("ADD"), and Attention Deficit/Hyperactivity Disorder ("ADHD").[4]  DSOF ¶ 5.

On August 25, 2017, Ms. Burke, Principal Concetta Lupo, and JKG's teacher Beth Junkin were notified that JKG had Generalized Anxiety Disorder.  PSOF ¶ 9.  The following week, the school nurse received JKG's physical examination from his healthcare providers, which indicated that JKG had been diagnosed with Generalized Anxiety Disorder and had a rule-out for Autism Spectrum Disorder, ADD, and ADHD.  *Id.* ¶ 10.  On September 6, 2017, JK indicated to Principal Lupo that JKG had "issues" at his prior school.  *Id.* ¶ 11.  Later that month, Ms. Junkin told JK that JKG was "having trouble staying organized" and "[n]eeds reminders at times to get started on his work and to follow directions."  *Id.* ¶ 12.  However, Ms. Junkin

---

[2] JKG previously attended Penn Christian Academy from kindergarten through second grade.  PSOF ¶ 6.  JK signed a release authorizing the District to secure JKG's records from Penn Christian Academy on August 24, 2017. *Id.* ¶ 8.
[3] A "rule-out" refers to the outstanding need for a health professional to determine through further testing whether an individual suffers from certain health conditions.  PSOF ¶ 10.
[4] JKG's physician signed off on the Health History Form as well.  DSOF ¶ 6.  The Form did not reference any medical conditions that required medication, restricted JKG's activity, or affected his education.  *Id.*

indicated that she was not concerned, stating that JKG was "bright and capable" and that JK "needed to be aware, not concerned."[5]  Defs.' Resp. to Pl.'s Statement of Facts ¶ 12, ECF No. 17 (Hereinafter "DRSOF").  On November 9, 2017, Ms. Junkin informed District Speech Pathologist Teresa Ehrhart that JKG "always says that he doesn't understand and he has a hard time processing directions."  PSOF ¶ 13.  Ms. Ehrhart thereafter administered a screening which indicated that further evaluation was not necessary at that time.  DSOF ¶ 12; Pls.' Resp. to Def.'s Statement of Facts ¶ 12, ECF No. 18 (Hereinafter "PRSOF").

Around the time of JKG's screening, JK informed Ms. Junkin that JKG had autism and was going to therapy.  DSOF ¶ 9; PRSOF ¶ 9.  Ms. Junkin asked for documentation of JKG's autism diagnosis.[6]  DSOF ¶ 10.  In December 2017, JK informed the District of JKG's potential autism diagnosis and the District also requested documentation to that effect.  *Id.* ¶ 14.  JK thereafter provided the District with a DSM-5 Diagnostic Review from the Child Guidance Resource Center ("CGRC"), a counseling agency working with JKG, along with contact information for Jon Lauriello MA, NCC, a professional counselor with CGRC.[7]  *Id.*  The Review Form indicated a diagnosis of Generalized Anxiety Disorder beginning October 21, 2017 and Autism Spectrum Disorder beginning December 6, 2017.  *Id.*  The District then sought additional information from Mr. Lauriello concerning JKG's diagnosis and informed JK on January 16, 2018 that they were still trying to schedule a time to speak with him.  *Id.* ¶ 15.  On or about January 22, 2018, Mr. Lauriello provided the District with the same Review Form and stated that

---

[5] Ms. Junkin later testified that JKG's disorganization was not impacting his learning in the classroom during this time.  DRSOF ¶ 12.
[6] Ms. Junkin later testified that, at the time, she "wasn't seeing any behaviors that were impeding [JKG's] learning" and that JKG did not present like a student with autism.  DRSOF ¶ 13.
[7] Mr. Lauriello did not become a licensed professional counselor until either September or October of 2018, although he worked under the supervision of a professional counselor with whom he consulted regarding the administration of the DSM-5 Diagnostic Review.  DSOF ¶ 17; PRSOF ¶ 17.

he would forward a more formalized report with JKG's diagnosis as soon as possible.[8]  *Id.* ¶ 20. Three days later, Mr. Lauriello emailed Ms. Burke stating that he had conducted additional assessments for the purpose of establishing whether further testing was necessary, but would refrain from administering a more formalized assessment to avoid duplicating evaluations that he assumed the District's psychologist would want to complete.  *Id.* ¶ 21; PSOF ¶ 16.

On January 17, 2018, JK informed Ms. Junkin that JKG returned from school the previous day and stated that he was unable to concentrate and get his work done.  PSOF ¶ 15. Ms. Junkin told JK that JKG was having a difficult time focusing and was struggling with his social interactions.  *Id.*  Ms. Junkin then emailed JK on January 31, 2018 stating that JKG was "refusing to follow the rules…[required] continual direction" and was getting into physical altercations with others.[9]  *Id.*  On February 13, 2018, the school's Child Study Team convened to discuss JKG's diagnosis.[10]  *Id.* ¶ 17.  During this meeting, the Team concluded that JKG should be referred for a Multidisciplinary Evaluation ("MDE"), including academic assessments, behavioral and emotional assessments, and a Functional Behavioral Assessment ("FBA").  *Id.*

On March 8, 2018, the District issued a Prior Written Notice for Initial Evaluation and Request for Consent Form, which JK signed and returned on March 16, 2018.  DSOF ¶ 24.  In April 2018, CGRC issued a report confirming JKG's earlier autism diagnosis.  *Id.* ¶ 25; DRSOF ¶ 25.  On May 15, 2018, the District issued an initial evaluation report.  DSOF ¶ 19.  The report contained an FBA identifying JKG's behaviors of concern as being off-task and invasion of personal space.  DSOF ¶ 28.  Additionally, the report concluded that JKG qualified for special

---

[8] Mr. Lauriello also provided Ms. Burke with JKG's diagnostic summaries via email and explained how he arrived at his diagnosis.  PSOF ¶ 16.
[9] Ms. Junkin later testified that JKG's behavior from September 2017 through January 2018 "were not interfering with [his] learning whatsoever."  She went on to state that January "is when we started to see some problems on the playground, some problems with compliance, some problems in special areas."  DRSOF ¶ 17.
[10] JK provided the Team with a Functional Behavioral Assessment (FBA) completed the previous school year which determined that JKG was ineligible for school-based behavioral support.  DSOF ¶ 23.

education as a student with autism, but that a Positive Behavioral Support Plan ("PBSP") was not warranted since JKG's behaviors "were not atypical to a level from his peers." *Id.* ¶¶ 28-29; PSOF ¶ 20.

In June 2018, individuals from the District and JK met to develop JKG's IEP. DSOF ¶ 31. The IEP adopted the conclusions of the District's initial evaluation report as to JKG's needs.[11] *Id.* ¶ 33. In its final version, the IEP contained two goals: one for written expression and one for behavior. PSOF ¶ 22. The IEP also called for JKG to spend 98% of the day in a regular educational setting. *Id.* ¶ 23. In July 2018, JK approved the proposed IEP and placement. DSOF ¶ 36. JKG entered his fourth grade year in September 2018 and began receiving social skills instruction from a District special education teacher. *Id.* ¶ 37.

Shortly after the start of the new school year, District personnel began reporting problematic behavior by JKG in the cafeteria and during recess. *Id.* ¶ 39. On October 30, 2018, JKG did not comply with orders to return to the school building and exhibited self-injurious behavior, including banging his head on various surfaces. *Id.* ¶ 40; PSOF ¶ 26. District personnel needed to restrain JKG for approximately ten minutes. DSOF ¶ 41. As a result, JKG's IEP team met on November 5, 2018 and revised the IEP to include mitigation strategies for when JKG appeared to be upset. *Id.* ¶ 42. The District also implemented a more detailed recess support plan and requested permission from JK to perform an FBA based on JKG's behavior in October, to which JK agreed in late November. *Id.* ¶¶ 42, 44-45.

Following two additional incidents on the school bus in mid-November, Montgomery County Mobile Crisis completed a risk assessment of JKG on December 4, 2018. *Id.* ¶ 43, 46; PSOF ¶ 27. In developing JKG's crisis plan, District personnel reported that JKG's behavior

---

[11] The IEP also indicated that JKG did not exhibit any behaviors that impeded his learning or that of others. DSOF ¶ 32.

included crawling and running around in circles, hitting his head, attempting to run away or hide, and high-pitched screaming.  PSOF ¶ 27.  Around this time, the District also revised JKG's IEP with JK's approval.  DSOF ¶ 47.  On December 13, 2018, JKG was involved in a behavioral incident lasting several hours wherein JKG defied orders by staff, attempted to leave the room he was in or leave the building, destroyed property, and exhibited aggression toward his peers and members of the staff.  PSOF ¶ 28.  Staff members attempted to escort JKG to new locations depending on his level of aggression, which culminated in JKG exhibiting threatening behavior toward them.  DSOF ¶ 49, 51.  The District subsequently revised JKG's support plan to include choice-making strategies involving JKG and a District staff member.  *Id.* ¶ 52.

JKG's IEP team scheduled a meeting to discuss revisions to the IEP on December 19, 2018.  *Id.* ¶ 53.  However, on December 18, JKG was involved in another behavioral incident that lasted approximately two hours.  *Id.* ¶ 54.  This again included defiance, attempts to leave the building, and aggression, as well as punching and kicking staff members and an attempt to flood a bathroom.  *Id.* ¶ 56.  As a result, the District contacted the police.  PSOF ¶ 29.  After JK arrived, JKG eventually calmed down and was removed from the school.  DSOF ¶ 58.  JKG's IEP team met as scheduled the following day to update the IEP to include a new crisis plan, revised behavioral goals, and potential extended school year services.  *Id.* ¶ 59.  On January 7, 2019, JK withdrew JKG from the District, having never returned to school after the December 18 incident.[12]  *Id.* ¶ 61.

---

[12] JK later testified that she withdrew JKG because he "was being mistreated in school and she was not going to force him to suffer through that anymore."  PSOF ¶ 30.

### C.  Procedural History

Following JKG's withdraw, Plaintiffs filed a special education Due Process Complaint[13] with the Pennsylvania Department of Education in February 2019.  PSOF ¶ 31.  Plaintiffs sought compensation for the District's purported failure to adhere to its "Child Find" obligation and duty to craft an IEP reasonably calculated to enable JKG to receive meaningful educational benefits.  After litigating their claims over the course of five hearing dates, the Parties submitted written closing arguments on July 15, 2019.  *Id.* ¶¶ 32-33.  Special Education Hearing Officer Michael J. McElligott issued a Final Decision and Order on August 13, 2019.  *Id.* ¶ 34; DOSF ¶ 64.  The Hearing Officer concluded that:

> In accord with the findings of fact and conclusions of law…the Wissahickon School District denied the student FAPE in not having a social skills goal as part of the student's June 2018 IEP. There is no evidence, however, that this denial of FAPE has placed the student in a position where the student must be made whole through compensatory education.[14] Furthermore, Wissahickon School District's misguided procedural understanding of the special consideration question on the student's June 2018 IEP did not result in the denial of FAPE.[15] Any claim not specifically in this decision or order is denied.[16]
>
> PSOF ¶¶ 35-36.

---

[13] *See* 20 U.S.C. § 1415(c)(2), (f)(1)(A).

[14] The Hearing Officer held that no compensatory education remedy was available because there was no evidence on the record "as to where the student should be, educationally or developmentally, at this point in the student's education…there is no basis for awarding a make-whole compensatory education remedy."  DSOF ¶ 68.

[15] The Hearing Officer found that the District made a procedural error in concluding that it could not determine that JKG's behavior was impeding his learning until after an FBA was completed and a Positive Behavioral Support Plan ("PBSP") was in place.  However, he concluded that this procedural error did not lead to a denial of FAPE because, even if a PBSP had been in place during the fall of 2018, the acting-out behaviors exhibited by JKG were entirely new and a PBSP would not have addressed the relevant behaviors of concern.  DSOF ¶ 66.  The Hearing Officer further noted that "the record is clear that the acting out behaviors…were not the off-task and personal space issues identified as behaviors of concern in the School District's May 2018 FBA" and that any missteps by the District "had no bearing on the need for a subsequent FBA and PBSP in light of the acting-out behaviors which the student began to exhibit with the October 30, 2018 incident."  *Id.* ¶ 70.

[16] In addition to his findings regarding the District's IEP and procedural error, the Hearing Officer also determined that the District did not act with deliberate indifference toward JKG.  DSOF ¶ 65.  The Hearing Officer noted that "the record is clear that the District has always sought to understand and to program effectively for the student."  *Id.* ¶ 72.

Plaintiffs subsequently filed the present action on November 8, 2019.  ECF No. 1.  In their Complaint, Plaintiffs request that the Court reverse the Hearing Officer's decision not to award compensation under the IDEA and Section 504 of the Rehabilitation Act.  *See generally* Compl.  Plaintiffs also ask the Court to accept additional evidence regarding a potential compensatory education award.  *Id.*  On May 8, 2020, Defendant filed a Motion for Judgment on the Administrative Record asking the Court to uphold the Hearing Officer's Decision or, alternatively, a Motion for Summary Judgment in Defendant's favor.  ECF No. 12.  That same day, Plaintiffs also filed a Motion for Summary Judgement.  ECF No. 15.  On June 8, 2020, the Parties each filed a Response in Opposition to the other Party's Motion.  ECF Nos. 17, 18.

## III.    LEGAL STANDARD

### A.  District Court Review of IDEA Administrative Proceedings

Any party dissatisfied with state administrative proceedings under IDEA may bring a civil action seeking independent review by a United States district court of a final administrative order concerning that party's IDEA claims.  20 U.S.C. § 1415(i)(2)(A).  The Act provides that "the court (i) shall receive the records of the administrative proceedings; (2) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  *Id.* at § 1415(i)(2)(C). The applicable standard of review is "modified *de novo*," wherein the court is required to afford "due weight" to the factual findings of the Hearing Officer.  *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 263 (3d Cir. 2003).  "Due weight" means that "[f]actual findings from the administrative record are considered *prima facie* correct."  *Id.* at 270.  Likewise, the court "must accept the state agency's credibility determinations unless non-testimonial, extrinsic evidence in the record would justify a contrary conclusion."  *Shore Reg'l High Sch. Bd. of Educ.*

*v. P.S. ex rel P.S.*, 381 F.3d 194, 199 (3d Cir. 2004).

While the court may reject the Hearing Officer's findings of fact, it must provide an explanation for this departure. *Carlisle Area School v. Scott P. By and Through Bess P.*, 62 F.3d 520, 527 (3d Cir. 1995). The court should, however, refrain from imposing their own view as to which educational methods are preferable. *Matthew D. v. Avon Grove School Dist.*, No. 12-0777, 2015 WL 4243471, at *6 (E.D. Pa. July 13, 2015) (citing *Oberti v. Bd. of Ed. of Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1219 (3d Cir. 1993)). Ultimately, the party challenging the Hearing Officer's decision bears the burden of proving that the decision was incorrect. *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 392 (3d Cir. 2006). To the extent that the moving party's claims are not adjudicated under the above standard, the Rule 56 summary judgment standard applies. *See W.H. v. Schuykill Valley School Dist.*, 954 F. Supp. 2d 315, 321 (E.D. Pa. 2013).

**B. Motion for Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). Likewise, a factual dispute is material if "it might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Id.* at 255. However, the court must grant summary judgment where the non-moving party fails to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

IV.     **ANALYSIS**

   **A. Wissahickon School District's Child Find Obligations**

Plaintiffs assert that the Hearing Officer committed reversable error by summarily

denying their Child Find claim and finding no violation of the District's Child Find obligations

under 20 U.S.C. § 1412(a)(3).  Pls.' Mot. 4-12.  Specifically, Plaintiffs argue that because the

Hearing Officer did not explicitly detail his reasons for denying their Child Find Claim, his

decision should be reversed.  *Id.* at 6.  Likewise, Plaintiffs aver that the District did not act within

a reasonable amount of time in identifying and implementing accommodations for JKG's

disability.  *Id.* at 6, 11-12.  Plaintiffs allege that the District's Child Find obligations were

triggered when JK disclosed JKG's Generalized Anxiety Disorder diagnosis and rule-out for

ADD, ADHD, and autism at the beginning of the 2017-2018 school year.[17]  *Id.* at 11.  According

to Plaintiffs, the District's failure to respond appropriately and evaluate JKG when they had

reason to suspect a disability deprived JKG of appropriate IEP services and accommodations for

an entire year.  *Id.* at 12.  As a result, Plaintiffs seek reversal of the Hearing Officer's decision

and ask the Court to award compensatory education or order additional proceedings to determine

an appropriate remedy.  *Id.*

In response, Defendant counters that the Hearing Officer correctly found no violation of

the District's Child Find obligations.  *See* Def.'s Mot. 12-16.  Defendant asserts that Plaintiffs

have offered no evidence contradicting the Hearing Officer's conclusions or showing that the

District failed to take timely action in responding to JKG's needs.  *Id.* at 16; Def.'s Resp. 4.

Additionally, Defendant contends that the Hearing Officer was not required to provide a detailed

explanation for his denial of Plaintiff's Child Find claim.  Def.'s Resp. 4.  Defendant emphasizes

---

[17] Plaintiffs also claim that this trigger was reaffirmed throughout the school year as JKG continued to exhibit
behaviors indicating the presence of a disability.  Pls.' Mot. 11.

that Plaintiffs had an opportunity to offer evidence in support of their Child Find claim, and therefore were not precluded from presenting the issue to the Hearing Officer. *Id.* In denying "[a]ny claim not specifically in this decision or order," Defendant argues that the Hearing Officer simply did not find enough merit in Plaintiffs' claim to warrant a separate analysis. *Id.*

The Court discerns no basis in the record for reversing the Hearing Officer's decision to summarily deny Plaintiff's Child Find claim. School districts subject to the provisions of IDEA must provide appropriate accommodations to all children within the district in need of special education and develop a practical method for determining "which children with disabilities are currently receiving needed special education and related services." 20 U.S.C. § 1412(a)(3). This "Child Find" requirement places on school districts "a continuing obligation…to identify and evaluate all students reasonably suspected of having a disability." *P.P. ex rel. v. Michael P. v. W. Chester Area Sch. Dist.*, 585 F. 3d 727, 738 (3d Cir. 2009). School districts must act within a "reasonable time" upon notice of a student's behavior that is indicative of a disability. *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 250 (3d Cir. 2012). However, "schools need not rush to judgment or immediately evaluate every student exhibiting below-average capabilities, especially at a time when young children are developing at different speeds and acclimating to the school environment." *Id.* at 252. The reviewing court must also consider the information and resources available to the district during the relevant period. *See W.H.*, 954 F. Supp. 2d at 325 (citing *Ridley*, 680 F.3d at 273).

During his tour of Blue Bell Elementary School in May 2017, Ms. Burke believed that JKG presented as a typically developing student and JK did not inform her of any disabilities. DSOF ¶ 4. In August 2017, JKG's only formal medical diagnosis was for Generalized Anxiety Disorder and his Health History Form made no indication that this diagnosis required medication

or otherwise affected his education.  *See id.* ¶¶ 5-6.  JKG's teacher, Ms. Junkin, testified that

although JKG had some trouble staying organized in September 2017, she was not concerned

because such disorganization is typical for students at the beginning of the school year.  DRSOF

¶ 12.  Likewise, Ms. Junkin stated that JKG's disorganization was not impacting his performance

in the classroom.  *Id.*  When JKG told Ms. Junkin that he was having trouble understanding

instructions in November 2017, Ms. Junkin immediately contacted Teresa Ehrhart, the District's

speech and language pathologist.  PSOF ¶ 13.  Ms. Ehrhart thereafter administered a screening

which indicated that further evaluation was not necessary at that time.  DSOF ¶ 12.  Aside from

this instance, the Hearing Officer found that JKG "did not exhibit any problematic behaviors in

school" throughout the fall of 2017.  DRSOF ¶ 12.

On December 7, 2017, JK informed the District that JKG had been formally diagnosed

with autism.  PSOF ¶ 14.  The District requested documentation supporting JKG's diagnosis, and

JK provided a DSM-5 Diagnostic Review from CGRC and contact information for Jon Lauriello,

MA, NCC.  Def.'s Additional Statement of Facts ¶ 8, ECF No. 17 (Hereinafter "DASOF").  In a

section titled Psychiatric Disorders and Conditions, the Form listed "Autism Spectrum Disorder,

begin date December 6, 2017."  *Id.*  The District sought further information from Mr. Lauriello,[18]

and he provided Ms. Burke with his diagnostic summaries on January 22, 2018.  PRSOF ¶ 15.

Three days later, Mr. Lauriello sent an email informing Ms. Burke that he had completed

additional assessments of JKG that were suggestive of a spectrum disorder.  DSOF ¶ 21.  Mr.

Lauriello indicated, however, that he would refrain from conducting a more formalized

assessment because he anticipated that such testing would be administered by the school

---

[18] Ms. Burke testified that she had "never seen diagnosis documentation that looked like this" and that she "never had an autism diagnosis without a report or psychologist connected to it."  Additionally, Ms. Burke testified that she was waiting throughout December 2017 and January 2018 for additional documentation from Mr. Lauriello so that she, the school psychologist, and JK could "meet and determine our next steps."  DRSOF ¶ 14.

psychologist.  *Id.*  Ms. Junkin testified that it was only around this time that she started to see new behaviors of concern from JKG.  DRSOF ¶ 17.

On February 13, 2018, JKG's Child Study Team met to discuss his autism diagnosis and concluded that MDE and FBA referrals were appropriate.  PSOF ¶ 17.  The District subsequently issued a Prior Written Notice for Initial Evaluation and Request for Consent Form on March 8, 2018 and JK returned the form the following week.  *Id.* ¶ 18.  On May 15, 2018, the District sent its evaluation report to JK.  *Id.* ¶ 19.  The report contained an FBA identifying JKG's behaviors of concern as being off-task and invasion of personal space.  DSOF ¶ 28.  Additionally, the report concluded that JKG qualified for special education as a student with autism, but that a PBSP was not warranted since JKG's behaviors were not atypical from that of his peers.  *Id.* ¶¶ 28-29; PSOF ¶ 20.

In June 2018, District personnel and JK met to develop JKG's IEP, which JK approved in July 2018.  DSOF ¶¶ 31, 36.  JKG entered his fourth grade year in September 2018 and began receiving social skills instruction from a District special education teacher.  *Id.* ¶ 37.  JKG then began to engage in acting out behaviors that were different than those identified in his IEP. DASOF ¶ 36.  Within a week of exhibiting these new behaviors, JKG's IEP team met to discuss revising his IEP and requested permission to conduct a new FBA based on this behavior.  PSOF ¶ 26.  Further behavioral incidents occurred in November and December 2018, and the IEP was again revised.  DSOF ¶¶ 43-47.  Following a particularly severe episode, the IEP team met again on December 19, 2018.  *Id.* ¶¶ 54-59.  JKG subsequently withdrew from the District on January 7, 2019.  *Id.* ¶ 61.

The record in this case supports a finding that the District took the appropriate steps, within a reasonable time, to evaluate and accommodate JKG once it was on notice of a potential

disability.  The Hearing Officer's decision is reinforced by the fact that District personnel perceived no behaviors that inhibited JKG's performance or educational experience prior to his formal autism diagnosis.  *See Richard S. v. Wissahickon Sch. Dist.*, 334 F. App'x 508, 511 (3d Cir. 2009) (delayed provision of special education is not a Child Find violation where professional educators found student to be making meaningful progress in the classroom).  In response to JKG's ongoing diagnostic and behavioral developments, the District consistently sought to evaluate JKG and appropriately address his educational needs.  Additionally, the District regularly communicated with JK regarding JKG's needs in the classroom.  Plaintiffs have presented no new evidence justifying reversal of the Hearing Officer's decision.  They likewise have failed to provide a legal basis for concluding that the Hearing Officer was obligated to provide a detailed explanation for his denial of their Child Find claim.  Accordingly, the Hearing Officer's decision to summarily deny Plaintiffs' Child Find claim is affirmed.

## B.  Compensatory Education Under IDEA

In addition to his Child Find ruling, Plaintiffs argue that the Hearing Officer also committed reversable error by finding a denial of FAPE but not awarding compensatory education.  Pl.'s Mot. 12.  The Hearing Officer held that the District's failure to include a social skills goal in the June 2018 IEP constituted a denial of FAPE.  DASOF ¶ 33.  However, the Hearing Officer found that Plaintiffs offered no evidence "as to what a make-whole compensatory education remedy would look like" or that any denial of FAPE "placed the student in a position where the student must be made whole through compensatory education."  *Id.*  The Hearing Officer therefore concluded that there was no basis for ordering a make-whole compensatory education award.  *Id.*  Plaintiffs assert that because the Hearing Officer left a denial of FAPE unremedied despite substantial evidence warranting relief, the Court should

reverse this decision and award compensatory education.  Pls.' Mot. 12.

According to Plaintiffs, the Hearing Officer did not need to ascertain the exact contours of a compensatory education remedy since he already found a denial of FAPE.  Pls.' Mot. 14. Plaintiffs claim that the Hearing Officer mandated a higher standard of proof in requiring a showing of damages, when they needed only to show an insufficient IEP or denial of FAPE to receive compensatory education.  *Id.* at 13.  They further contend that the Hearing Officer only acknowledged the qualitative method for assessing compensatory education even though they were also seeking other appropriate relief, including contemporaneous costs incurred by JK.  *Id.* at 15.  Finally, Plaintiffs argue that the Hearing Officer failed to consider all relevant factors in fashioning discretionary equitable relief under IDEA.  *Id.* at 16.

Defendant asserts that the Hearing Officer did not employ a higher standard of proof by predicating his decision on whether compensatory education was necessary to make JKG whole. Def.'s Resp. 14-15.  By concluding that Plaintiffs sought qualitative compensatory education, Defendant argues that the Hearing Officer properly considered what position JKG should have been in absent a denial of FAPE.  Def.'s Mot. 6.  Defendant maintains that despite a denial of FAPE, compensatory education may be unnecessary where it would not help the student or where the student has flourished in their current placement.  *Id.* at 7.  Since Plaintiffs did not offer evidence as to what make-whole compensatory education would look like, Defendant reasons that the Hearing Officer was not obligated to engage in "evidentiary gap-filling" and speculate as to how much Plaintiffs were harmed.  Def.'s Resp. 16.

Under the IDEA, a court may fashion such relief as it deems appropriate, including an award of compensatory education.  *See Ferren C.*, 612 F.3d at 712 (citing 20 U.S.C. 1415(i)(2)(C)(iii)).  An award of compensatory education is an appropriate remedy in situations

involving a flagrant violations of IDEA. *Scott P.*, 62 F.3d at 536. While bad faith is not required, a court should award compensatory education when a school district "knows or should know that a child has an inappropriate IEP or is not receiving more than a *de minimis* educational benefit." *M.C. on Behalf of J.C. v. Central Regional School Dist.*, 81 F.3d 389, 397 (3d Cir. 1996). In awarding compensatory education, the court should place the student in the position they would have been but for the district's denial of FAPE. *Ferren C.*, 612 F.3d at 717-18.

The Court finds no basis for overturning the Hearing Officer's decision not to award compensatory education. While the Hearing Officer found that the District's failure to include a social skills goal in the IEP was a prejudicial flaw, he did not determine that the District knew, or should have known, that the IEP was deficient or that JKG was only receiving a *de minimis* educational benefit. DASOF ¶ 33. Furthermore, Plaintiffs had the opportunity to offer evidence justifying compensatory education and the Hearing Officer considered how this remedy might be appropriate under a quantitative or qualitative calculation. *Id.* ¶¶ 34-35. Based on the evidence offered by Plaintiffs, the Hearing Officer found no basis for awarding compensatory education. Plaintiffs have provided no additional evidence showing what damages they incurred as a result of the District's failure to include a social skills goal in the IEP. The Court is therefore unable to ascertain what position JKG would have been in but for the district's denial of FAPE. While the Court has discretion to fashion a remedy that it deems appropriate, the Court cannot unilaterally supply the facts necessary to reach such a decision.

### C.  Wissahickon School District's Procedural Error Under IDEA

In his Final Decision and Order, the Hearing Officer found that the District committed a procedural error by failing to conduct an FBA prior to developing the IEP. Pls.' Resp. 9. Plaintiffs contend that the Hearing Officer committed reversable error, however, by holding that

the District's procedural error did not entitle them to a remedy.  Compl. ¶ 63.  According to

Plaintiffs, the District's failure to conduct an FBA misinformed every aspect of the IEP.  *Id.* ¶

65(b).  As a result, Plaintiffs argue that JKG's behavior was not sufficiently addressed in the IEP,

which resulted in severe behavioral incidents.  *Id.*  Plaintiffs conclude that had the District not

made this error, the substance of the IEP would have been different and would have possibly

resulted in positive behavioral progress.  *Id.*

    In response, Defendant asserts that the Hearing Office correctly determined that a purely

procedural error does not constitute a violation of FAPE.  Def.'s Mot. 10.  Defendant argues that

the District's error did not concern the substance of the IEP, but rather the order of operations

that a school district must take in reaching certain decisions.  *Id.* at 11.  Likewise, Defendant

notes that Plaintiffs have offered no factual support refuting the Hearing Officer's finding that

JKG's behavior did not impede his learning prior to March 2018 and that his acting-out

behaviors in October 2018 were entirely new.  *See id.* at 11-12; Def.'s Resp. 12.  Given this lack

of evidence indicating reversable error, Defendant urges the Court to uphold the Hearing

Officer's determination that the District's procedural violation did not justify a remedy under

IDEA.  Def.'s Mot. 12.

    Compliance with IDEA's procedural requirements is not a goal in and of itself.  *Ridley*,

680 F.3d at 274.  Instead, a school district's procedural violation is of consequence only when it

impacts the substantive rights of students or parents.  *Id.*  Therefore, a purely procedural

violation of the IDEA cannot support an award of compensatory education.  *Michael P.*, 585 F.

3d at 739.  To be actionable under the IDEA, a procedural violation must result "in a loss of

educational opportunity for the student, seriously deprive[] parents of their participation rights,

or cause[] a deprivation of educational benefits."  *Ridley*, 680 F.3d at 274 (quoting *D.S. v.*

*Bayonne Bd. of Educ.*, 602 F.3d 553, 567 (3d Cir. 2010)).

In the instant case, the District's failure to conduct an FBA prior to developing the IEP neither deprived JKG of educational opportunities or benefits, nor inhibited JK's participation rights. Courts may infer a meaningful educational benefit when a student requiring special education accommodations performs well in a regular educational setting and advances from grade to grade. *D.S.*, 602 F.3d at 567 (citing *Rowley*, 458 U.S. at 203). Ms. Junkin testified at the administrative hearing that JKG's disorganization was not impacting his learning in the classroom throughout the fall of 2017. DRSOF ¶ 12. In the spring of 2018, JKG's Child Study Team issued a report concluding that his behaviors were not atypical from that of his peers. DSOF ¶¶ 28-29. During this entire period, JKG received instruction in a regular educational setting, and subsequently advanced from third grade to fourth grade. Additionally, JKG's Child Study Team regularly communicated with JK regarding their findings and the District obtained JK's approval of the proposed IEP and JKG's placement prior to implementation. DSOF ¶¶ 31, 36. Plaintiffs have offered no evidence demonstrating how these circumstances deprived JKG of an educational opportunity or JK of their participation rights. Therefore, the Court upholds the Hearing Officer's determination that the District's procedural violation did not justify a remedy under IDEA.

### D. Compensatory Damages Under Section 504 of the Rehabilitation Act

Plaintiffs argue that the Hearing Officer also committed reversable error by declining to remedy the District's denial of FAPE under Section 504 of the Rehabilitation Act.[19] Compl. ¶ 80. They request "any and all appropriate remedy" to the extent that a denial of FAPE under IDEA constitutes a denial of FAPE under Section 504." Pls.' Resp. 18. Defendant counters that

---

[19] Plaintiffs allege that the Hearing Officer never addressed the delay in provision of accommodations under Section 504. Compl. ¶ 81.

since Plaintiffs sought compensatory education under Section 504, they were required to establish that the District intentionally discriminated against JKG.  Def.'s Mot. 17.  According to Defendant, there is no evidence in the record to support an allegation of discrimination or that the District intentionally denied JKG appropriate accommodations.  *Id.*

Section 504 of the Rehabilitation act provides that "[n]o otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794.  To establish a claim under Section 504, a plaintiff must prove (1) that they are disabled as defined by the Act; (2) that they are otherwise qualified to participate in school activities; and (3) that they were denied educational benefits or otherwise subject to discrimination due to their disability.  *Shadie v. Hazleton Area School Dist.*, 580 Fed. App'x 67, 70 (3d Cir. 2014).  Plaintiffs seeking compensatory damages must also prove that the discrimination was intentional.  *Id.*  This requires "proof that, at a minimum, the school district exhibited deliberate indifference toward the underlying act of discrimination."  *Id.*  A school district acts with deliberate indifference when (1) it has "knowledge that a federally protected right is substantially likely to be violated" and (2) fails to act despite that knowledge.  *Id.*

In the instant case, Plaintiffs seek compensatory damages for the District's purported violation of Section 504.  Pls.' Resp. 18.  Plaintiffs therefore must show that the District acted with deliberate indifference toward an underlying act of discrimination against JKG.  The Hearing Officer noted that "the record is clear that the District has always sought to understand and to program effectively for the student."  DSOF ¶ 72.  Likewise, the Hearing Officer explicitly held that the District did not act with deliberate indifference toward JKG.  *Id.*  ¶ 65.

Therefore, the Hearing Officer did not remedy a violation of Section 504 because he found that

no such violation occurred.  Plaintiffs offer no new evidence showing that the District acted with

deliberate indifference or denied JKG services because he was disabled.  Accordingly, the Court

upholds the Hearing Officer's decision not to award compensation to Plaintiffs for a violation of

Section 504.

### E.  Additional Evidence Regarding Compensatory Education

Plaintiffs request that the Court accept additional evidence regarding the type and form of

services JKG requires in order to craft a proper compensatory education remedy.  Compl. ¶ 84.

Specifically, Plaintiffs ask the Court to consider JKG's new IEP from his current school district.

Pls.' Mot. 18.  Plaintiffs claim that this additional evidence will show that JKG is owed relief for

the District's denial of FAPE under IDEA and Section 504.  Compl. ¶ 86.  Defendant argues that

the Court should decline hearing any new evidence on this matter.  Def.'s Mot. 19.  Absent a

sufficient justification for not offering the evidence during the administrative hearing, Defendant

asserts that Plaintiffs should not be permitted to offer it at this stage of the case.  *Id.*  Defendant

notes that Plaintiffs have forgone any depositions in this matter and have not submitted any

written discovery to the District.  DSOF ¶ 73.  Furthermore, Defendant argues that this additional

evidence would not demonstrate that Plaintiffs were entitled to compensatory education since it

is not clear how the new IEP would demonstrate a deficiency in the previous IEP given JKG's

new behavioral issues in the fall of 2018.  Def.'s Mot. 9.

A reviewing court has discretion to consider evidence not presented at the state

administrative hearing in assessing the reasonableness of the district's initial IEP or provision of

special education services.  *T.L. v. Lower Merion School District*, No. 15-0885, 2015 WL

7252886, at *4 (E.D. Pa. Nov. 17, 2015) (citing *Susan N. v. Wilson School Dist.*, 70 F.3d 751,

762 (3d Cir. 1995)).  The court must evaluate this evidence to determine whether it is relevant, non-cumulative, and if the district satisfied its obligations under IDEA.  *Susan N.*, 70 F.3d at 759.  During review of the Hearing Officer's decision, the court must refrain from substituting "its own notions of sound educational policy for those of local school authorities."  *S.H.*, 336 F.3d at 270.  Additionally, the court must assess the appropriateness of an IEP as of the time it was made.  *W.H.*, 954 F. Supp. 2d at 324 (citing *Susan N.*, 70 F.3d at 762).  Therefore, the court should remain mindful of the inherent dangers of second-guessing the decisions of the school district with information that was not available when such decisions were made.  *Susan N.*, 70 F.3d at 762.

The Hearing Officer specifically found that JKG's acting-out behaviors in the fall of 2018 were entirely new.  DASOF ¶ 36.  Additionally, a private Board Certified Behavior Analyst ("BCBA") testified that even if a PBSP had been in place during the 2017-2018 school year, it would have needed to be revised in response to these new behaviors.  DSOF ¶ 63.  Plaintiffs have failed to demonstrate how a new IEP, created after the genesis of the acting-out behaviors, would refute the Hearing Officer's conclusion that the District's missteps "had no bearing on the need for a subsequent FBA and PBSP."  *Id.*  Plaintiffs had the opportunity to offer evidence at the state administrative hearing regarding the appropriate type and form of compensatory education warranted by the facts of this case.  They elected not to do so, and they declined to take any depositions or propound written discovery during this appeal.  DSOF ¶ 73.  The Court finds that Plaintiffs' proffered evidence would offer no additional value in assessing the reasonableness of the district's initial IEP or provision of special education services.  Therefore, the Court rejects this additional evidence on appeal.

V.     **CONCLUSION**

Plaintiffs have failed to offer evidence justifying departure from the "due weight" the Court must afford to the factual findings of the Hearing Officer.  The Court thus declines Plaintiffs' request to overturn the Hearing Officer's decision and holds that Plaintiffs have not met their burden of proof in challenging his findings and conclusions.  Accordingly, Plaintiffs' Motion for Summary Judgment is denied.  The Hearing Officer's decision is affirmed, and Defendant's Motion for Judgment on the Administrative Record is granted.  An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge